UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEFFERY JOHNSON                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:21-CV-P157-JHM

ANNA VALENTINE *et al.*                                          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motions for summary judgment filed by Defendant

Dr. Craig Meek (DN 161) and by Dr. Stephen Shelton.  (DN 164).  Proceeding *pro se*, Plaintiff

Jeffery Johnson filed a response to the motions.  (DN 183).  Defendants Meek and Shelton each

filed a reply.  (DNs 188 and 190).  For the reasons that follow, the motions for summary judgment

will be granted.

**I.**

In Plaintiff's verified superseding amended complaint (DN 30), he stated, "Dr. Meek &

Shelton do know that they force medicated me with the bad drug Seroquel against my will after a

medical board told them they could NOT."  (*Id.*, PageID.169).  He further asserted as follows:

> Both doctors know that Seroquel causes diabetes & they know I did not sign the
> consent to treat with Seroquel form & disreguarded the excessive risk to my health
> & safety.  Both doctor do know that substantial risk of harm existed to me.  The
> Defendants do know I'm diabetic because of their actions & my 8th Amendment
> rights have been violated.

(*Id.*).

The Court conducted an initial review of the amended complaint pursuant to 28 U.S.C.

§ 1915A and allowed Plaintiff's claims based on the above allegations to proceed against

Defendants Meek and Shelton in their individual capacities for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  (DN 56).[1]

## II.

### A.

The Court will summarize the medical records produced by Defendants.  The records show that on August 17, 2016, the medical department at Bell County Forestry Camp (BCFC), where Plaintiff was housed at the time, had "received several calls from security staff" to alert medical staff of Plaintiff's "bizarre out of the ordinary behavior[,]" including "staying up all night, bathing in baby oil, and staring into space for long periods of time."  (DN 163, PageID.1174).  Plaintiff also reported that he had stopped taking his blood pressure medicine stating that he "'threw them away because he did not feel safe taking them.'"  (*Id.*).  At that time, the BCFC medical provider referred Plaintiff for a psychiatric evaluation.  (*Id.*).

On the same date, Plaintiff was seen via video by Dr. Meek who noted that Plaintiff "was referred today on an urgent basis as staff in his dorm had been quite concerned about him."  (*Id.*, PageID.1175).  In the medical record from that date, Dr. Meek stated his belief that this was "an early developing manic episode, though he appears to not have had any previous mental health tx" and that "we need to have him moved, as they cannot keep him on an observation or hold setting >24 hours at BCFC."  He stated that he would submit a move request.  (*Id.*, PageID.1176).

The medical records show that Plaintiff was transferred to Kentucky State Reformatory (KSR) and evaluated upon his arrival there on August 19, 2016, by a mental health provider who

---

[1] Upon initial review, the Court also dismissed claims against Defendant "Ky DOC/KSR," all official-capacity claims, and individual-capacity claims against Defendants Warden Anna Valentine, "Astra Zentica Pharmaceutical," and Warden Aaron Smith.  (*Id.*).  In addition, the Court dismissed Plaintiff's claim that Defendant Shelton made "sexual advances" toward him and that Defendants Shelton and Meek prescribed him Seroquel "to cover up Dr. Shelton['s] sexual advances."  (*Id.*).

charted that Plaintiff "presented as manic." (*Id.*, PageID.1178). Plaintiff was put on a fifteen minute watch in KSR's Correctional Psychiatric Treatment Unit (CPTU). (*Id.*). He was prescribed Zyprexa[2] by Defendant Shelton on that date. (*Id.*, PageID.1183). Dr. Shelton noted on August 28, 2016, that Plaintiff "reports benefitting from Zyprexa without adverse side effect." (*Id.*, PageID.1179).

Several days later, on August 31, 2016, a psychology assessment showed that Plaintiff "continues to be manic, more so psychotic with paranoid." (*Id.*, PageID.1180). The medical record notes that Plaintiff's mother had reported that Plaintiff's "last manic episode was 2 years ago, and the episodes tend to last 2 months in duration. Mr. Johnson is currently 1 month into this episode. He has no insight and refuses medication." (*Id.*). On September 3, 2016, Defendant Shelton charted that Plaintiff "appears psychotic" and that he "remains tightly medical noncompliant." (*Id.*, PageID.1181). He also noted, "A/P: will discuss with treatment team on Tuesday whether it appears that we need to pursue an involuntary medication order at this time." (*Id.*). On September 23, 2016, Defendant Shelton charted that Plaintiff remained noncompliant with his medication. (*Id.*, PageID.1208). The medical records also show that Plaintiff was refusing to take his medications on October 3, 2016, and that the mental health provider charted, "May have to look into Involuntary medication at some point in the future." (*Id.*, PageID.1207). According to the medical records, Plaintiff remained noncompliant with his medication in notes made on October 7, 2016 (*Id.*, PageID.1206), and October 14, 2016. (*Id.*, PageID.1205).

---

[2] Zyprexa "treats schizophrenia and bipolar disorder. It works by balancing the levels of dopamine and serotonin in your brain, substances that help regulate mood, behaviors, and thoughts. It belongs to a group of medications called antipsychotics. Antipsychotic medications can be used to treat several kinds of mental health conditions." https://my.clevelandclinic.org/health/drugs/18192-olanzapine-tablets#:~:text=Olanzapine%20is%20an%20 Antipsychotic%20medication, this%20medication%20is%20Zyprexa%C2%AE (last visited September 13, 2023).

On October 28, 2016, Defendant Shelton charted that Plaintiff was "extremely delusional"; would not shower due to "paranoia"; and remained noncompliant with his medication. (*Id.*, PageID.1204). Defendant Shelton noted that "due to patient severely and gravely impaired level of functioning representing a danger to himself as well as others, the treatment team has decided to pursue an involuntary medication order." (*Id.*).

The first Involuntary Medication Hearing was held on November 15, 2016, after which Defendant Shelton charted as follows:

> The patient attended his involuntary medication order hearing. He was much more appropriately verbal today and interacted appropriately with committee for the most part. Even though he appears to have some ongoing delusions they appeared much less pronounced today. Plan: the committee decided not to proceed with involuntary medication order. No change will be made at this time.

(*Id.*, PageID.1201).

Defendant Shelton noted on November 18, 2016, that Plaintiff "remains totally noncompliant with his medication." (*Id.*, PageID.1213). On December 1, 2016, the medical records show that a mental health provider spoke with Plaintiff's mother who stated that she had received a letter from Plaintiff that made her believe that he was "not in touch with reality." (*Id.*, PageID.1199). Plaintiff's mother reported that he does not believe that he needs psychiatric medication; that he "won't take them unless ordered to do so"; and that he had previously been court-ordered to take medication before his current incarceration. (*Id.*). The medical record from that date shows that Plaintiff's mother also stated that Plaintiff had previously been prescribed Seroquel. (*Id.*).

On December 16, 2016, Defendant Shelton charted that Plaintiff "remains noncompliant with medication" and "remains delusional." (*Id.*, PageID.1215). According to a medical record made on December 19, 2016, Plaintiff continued to show delusional thinking and remained

4

noncompliant with his medication. (*Id.*, PageID.1214). On December 20, 2016, Defendant Shelton charted that Plaintiff "remains extremely delusional and as a result gravely disabled [and] . . . remains totally noncompliant with his medication." (*Id.*, PageID.1213). He also noted, "Plan: the patient has shown a worsening trend of decompensation. It is the consensus of the treatment team that the patient very clearly meets criteria for an involuntary medication order at this time. A hearing will be requested." (*Id.*).

Defendant Meek performed a psychiatric review of Plaintiff on January 17, 2017, and charted as follows:

> Mr. Johnson was moved upstairs in C-wing this morning. Per staff report he walked over to his door to be cuffed up, and then suddenly exclaimed, "I can't walk!" and then fell over, thus requiring a cell entry. He was moved in a wheelchair. Dr. Manning saw him yesterday, and documented that there was no physical reason to explain inability to stand or ambulate, or to explain his many complaints of "extreme pain."

> He has been writing frequent letters reporting that various staff have assaulted and mistreated him in various ways, all of which appear[] to be certainly false. This reporting, on a daily basis, in itself is not harmful. However, recently he wrote a letter in which he made very serious threats directed toward the primary care APRN assigned to CPTU. He told her that he was going to make sure she suffered like he is. Stated he was "marking her children for death, so start getting ready for their funerals." Went on to state he was going to use a baseball bat to beat her spine out of her back so that she could ride around in a wheelchair and be denied medical care just []as she has denied him care. Stated "I'll be the last inmate you'll ever deny care for."

> Today he was lying on his bed when I approached his cell door. Spoke with him through his tray slot, which was open. He made no effort to turn over to talk, but then began claiming that a Captain and another officer "assaulted me and then brought me up here for no reason!" I asked him about the visit with Dr. Manning, and that we are puzzled by his physical complaints. He states that "I have told them over and over what I need: an MRI of my spine with contrast!" Asked him about the Zyprexa, which he has been refusing, and says "I do not need that medicine! I need pain medicine!"

(*Id.*, PageID.1209-10). Defendant Meek assessed Plaintiff as having "Unspecified psychosis not due to a substance or known physiological condition . . . ." (*Id.*, PageID.1210). He stated, "[W]ith

the escalation in his written statements now taking the form of death threats and threats of physical injury to staff and family members, I believe we have no choice but to pursue another involuntary medication hearing for this man." (*Id.*).

On January 24, 2017, a second Involuntary Medication Hearing was held. Defendant Meek charted the following:

> OPS – IMO hearing; On this date a hearing was convened per CPP 13.7 to consider the tx team's request for a 14-day involuntary medication order for this patient, whom we believe has a severe mental illness, and because of that illness is a danger to both himself and others around him. The pt. attended the hearing and spoke extensively on his own behalf. The committee voted to approve the order, and so I have entered medication orders for the next two weeks.

(*Id.*, PageID.1228). Pursuant to the involuntary medication order, Dr. Meek ordered Plaintiff to be given 5 mg of Haloperidol Lactate and Benztropine Mesylate on any day he refused oral Haloperidol. (*Id.*). Thereafter when Plaintiff refused oral dosages, he was given the injections prescribed in the involuntary medication order. (*Id.*, PageID.1225, 1226, 1227). On February 3, 2017, Defendant Meek charted that Plaintiff was tolerating the medication well and prescribed Haloperidol Decanoate. (*Id.*, PageID.1224).

A fourteen-day follow up hearing was held on February 7, 2017, after which Defendant Meek charted the following:

> OPS – IMO Hearing. On 2/7/2017 a 14-day hearing was held re. Mr. Johnson's IMO, per CPP 13.7. After the tx team had presented updates on his condition and functioning, the committee approved our request to extend the IMO for up to 180 additional days. I will now again order Haloperidol Decanoate injections, but will also add a supplement of Seroquel as this, per is mother's report, has been a very helpful medication for this man in past manic/psychotic episodes.

(*Id.*, PageID.1228). A medical note from February 13, 2017, stated, "Notes from Treatment Team: Calm, meds are helping." (*Id.*, PageID.1221). A medical note from February 22, 2017, stated, "Notes from Treatment Team: Meds are helping. He is walking to his door now. . . . Mr. Johnson

appears a lot calmer, more cooperative since being on involuntary medication." (*Id.*, PageID.1220).

Defendant Meek undertook a psychiatric review of Plaintiff on March 9, 2017, and made the following assessments:

> His manic episode is slowly resolving, along with paranoid and delusional thought content. He seems much more cooperative at this point. His insight is gradually improving, but I would not yet say that he is fully invested in the need for ongoing consistent medication compliance. We will continue the IMO at this time.

(*Id.*, PageID.1216). Defendant Meek lowered Plaintiff's dosage of Seroquel from 100 mg to 50 mg at that time and continued oral haloperidol and "Hal Dec injections." (*Id.*).

On March 23, 2017, Defendant Meek undertook another psychiatric review of Plaintiff and made the following assessments:

> PLAN: Continue the IMO. Continue current medications as they are. He appears to be tolerating them well, and improving gradually over time. Insight is still in question, and with insight goes compliance. Will continue to monitor on a regular basis, but he appears to be safe and functioning at this time, with the help of the medication.

(*Id.*, PageID.1186).

On May 30, 2017, Defendant Meek wrote an involuntary medication update regarding Plaintiff to the KSR Warden. (*Id.*, PageID.1148-49). He made the following assessments:

> A/P: Mr. Johnson is doing quite well overall, considering where he was when he first came to KSR/CPTU. . . . Our main concern now is that he continue to take the medication and continue to make progress on his overall psychosocial functioning while housed in a GP setting once again. I will try to meet with him every two weeks, and if he continues to improve and/or remains stable/steady, I will not request an extension of the IMO when it comes up for renewal in August.

(*Id.*, PageID.1149).

On July 25, 2017, Defendant Meek reported to the KSR Warden that Plaintiff was "seemingly committed to sticking with his mental health treatment, acknowledging that he does

have true Bipolar Disorder" and that Plaintiff had agreed that "he needs to maintain consistent medication compliance" and planned to do so. (*Id.*, PageID.1146). Defendant Meek stated, "At this point, I plan to allow the IMO to expire on 8/6/17." (*Id.*).

Plaintiff's medical records show that Plaintiff saw Defendant Shelton on December 9, 2019, and stated that he wanted "to convert his current regimen over to Haldol decanote so as not to have to go to pill call." (*Id.*, PageID.1189). At that time, Defendant Shelton canceled Plaintiff's prescription for Quetiapine, the generic form of Seroquel, and prescribed an injectable Haldol Deconate Solution. (*Id.*).

### B.

In support of summary judgment, Defendant Meek argues that Plaintiff cannot meet the objective component of a claim for deliberate indifference to serious medical needs because he has presented no evidence that the prescription for Seroquel caused his diabetes. (DN 161, PageID.886). He maintains that the medical records show that Plaintiff has "a family history of diabetes, that he developed signs of diabetes before Dr. Meek prescribed Seroquel, and that the condition developed over several years." (*Id.*).[3] Defendant Meek maintains that Plaintiff has not presented expert evidence to show causation to support the objective component. (*Id.*). Defendant Meek argues that he exercised his medical judgment in prescribing Seroquel to Plaintiff and that Plaintiff's allegations amounts to a disagreement with his medical treatment which does not give rise to an Eighth Amendment claim. (*Id.*, PageID.887-88).

Defendant Meek also argues that Plaintiff cannot establish the subjective component of a claim for deliberate indifference to serious medical needs because Plaintiff has not shown that

---

[3] Defendant Meek produced several medical records to support these contentions, including a medical record dated November 17, 2021, which showed that Plaintiff reported that his "mother is a diabetic and that the disease process runs in the family" (DN 163, PageID.1236) and a medical record dated June 5, 2016, which showed that he had been diagnosed with hyperglycemia. (*Id.*, PageID.1170-71).

Defendant Meek knew that the decision to prescribe Seroquel was incorrect or inadequate under the deliberate indifference standard.  (*Id.*, PageID.889).

Defendant Meek further contends that Plaintiff's claim that he was force medicated after the Involuntary Medication Hearing Committee declined to issue the involuntary medication order at its first hearing fails because the medical records show that Plaintiff was force medicated after the second hearing, where the committee unanimously approved the involuntary medication order. (*Id.*, PageID.890).[4]

## C.

In his motion for summary judgment, Defendant Shelton argues that Plaintiff has failed to show deliberate indifference because he failed to show that Defendant Shelton administered medication outside of the involuntary medication order or Plaintiff's plan for medical care. (DN 164, PageID.1249-50). Defendant Shelton argues, "To the contrary, the record shows that Mr. Johnson's psychiatric care team work[ed] toward developing a diagnosis for his mental health concerns following his admission to CPTU and create[d] an appropriate medication regimen to treat his condition." (*Id.*, PageID.1250).  He maintains, "Mr. Johnson was a danger to himself and others, and therefore his care team went through the necessary process of obtaining an involuntary medication order so that they could administer the medications Mr. Johnson's mental illness required." (*Id.*).  Defendant Sheldon also argues that Plaintiff has failed to provide evidence that his diabetes diagnosis is the result of taking Seroquel.  (*Id.*).   In addition to medical records, Defendant Shelton attaches his affidavit in support of his motion.  (DN 164, PageID.1328-30).

---

[4] Defendant Meek also argues that Plaintiff failed to exhaust his administrative remedies with the regard to the claim based on the involuntary medication order and that the claim is barred by the statute of limitations.  (*Id.*, PageID.160-61).  Since the Court will grant the motions for summary judgment on the merits, the Court will not address these arguments.

**D.**

Plaintiff filed an unsworn "superseding response" to Defendant Meek's and Shelton's motions for summary judgment. (DN 183).[5]  Plaintiff argues that that his medical records "indicate he was locked in isolating condition for 5 months prior to being forced medicated against his will by these 2 idiots."[6]  (DN 183, PageID.1449).  He references an article that he attached to his pretrial memorandum (DN 133, PageID.747-66)[7] which he states "documents" that putting an inmate in isolating conditions causes symptoms of mental illness.  (DN 183, PageID.1449).  He also maintains that Defendants committed violations of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) when they spoke to Plaintiff through his cell door about his medical issues.  (*Id*., PageID.1449).

Plaintiff states, "These 2 idiots were told by ah medical board on Nov 15 2016 that they could 'not' force medicate Plaintiff against his will."  (*Id*., PageID.1449).  He further asserts as follows:

> These 2 idiots are the one that are extremely delusional they think that get to lock me in isolating conditions, torture me, while committing HIPPA violations & human rights violations & denieing me my medically prescribed disability devices cause ah mental health crisis after medical records show I had "no" mental health issues when met them and keep me in those condition till they find ah exscuse to force medication me with the bad drug Seroquel against my will.

---

[5] Plaintiff filed a previous response which he captioned as a "superseding response" (DN 178), but by prior Order the Court found that it would not consider that response in ruling on the motions for summary judgment; gave Plaintiff additional time to file a response; and stated that the response Plaintiff was ordered to file would be the only response considered in ruling on the motions for summary judgment.  (DN 179).

[6] Plaintiff makes various allegations concerning his conditions of confinement in the CPTU.  However, as discussed below, Plaintiff's conditions are not at issue in this case, and the Court will not address those newly raised allegations herein.

[7] Plaintiff captioned this filing as both a pretrial memorandum and a motion for summary judgment.  (DN 133).  The Court denied Plaintiff's motion for summary judgment by prior Order.  (DN 148).

(*Id*., PageID.1450).  Plaintiff further argues, "Defendant admit I told them I did 'not' want to take the medication and that I was in severe pain and begging for ah MRI & back sergeon & that I need my medically prescribed pain medication I was on before." (*Id*., PageID.1451).

Plaintiff further argues that Defendants "know and admit they know the side effect of the bad drug Seroquel & substantial risk of harm associated with Seroquel." (*Id*., PageID.1452).  He further asserts as follows:

> [Defendants] further acknowledge and admit they knew Plaintiff's mother was diabetic see pg 6 Dr. Meek . . . and that Plaintiff had warning signs commonly associated with diabetes and that both Dr. Meek and Dr. Shelton both admit they both knew this prior to force medicating Plaintiff with the bad drug Seroquel which is known to cause diabetes as the FDA & National Alliance on Mental Illness has warned.

(*Id*.).  Plaintiff continues, "So both Dr. Meek & Shelton have admitted they have knowledge of the substantial risk of harm to Plaintiffs health & safty then & in the future and that they delebertaly ignored that risk." (*Id*.).  He states, "The FDA in 2004 issued ah warning on Seroquel and the metabolic changes it cause to the body to doctor and put it on the Seroquel label as releated to diabetes." (*Id*., PageID.1453).   Plaintiff argues, "Any 'lay' person of fact finder would an will conclude they knew of substantial risk of harm and disreguarded that risk which includes ah FDA label warning that Seroquel can cause diabetes as it has to Plaintiff." (*Id*., PageID.1455).

Plaintiff also states, "The Defendant in fact tried to force Plaintiff to sign ah consent to treat with Seroquel form . . . which proves they had subjective knowlage of the risk and the risk were plainly for seeable to any rational and reasonable prison official." (*Id*., PageID.1456).  Plaintiff maintains that Defendant Meek claims that he had information from Plaintiff's mother that Seroquel had been helpful in the past, but he cites an affidavit from his mother which states that she did not tell him that.  (DN *Id.*, PageID.1449).  He also states, "In the second force

medication medical board hearing my legal representative was the guy that hands out basket balls in the gym with 'no' medical exsperance." (*Id*., PageID.1467).

Plaintiff did not attach exhibits to his response, but the Court has reviewed Plaintiff's attachments to his pretrial memorandum (DN 133) and the additional exhibits filed by Plaintiff separately which he requested to be attached to his pretrial memorandum.  (DN 181).  The Court will discuss the relevant documents below.

### E.

In Defendant Meek's reply, he argues that Plaintiff cannot raise new issues unrelated to the claims raised in the amended complaint and which the Court allowed to proceed upon initial review pursuant to § 1915A.  (DN 190, PageID.1489).  He also asserts that Plaintiff has failed to establish a causal link between the Seroquel and diabetes.  (*Id.*, PageID.1491).  He  cites his responses to Plaintiff's interrogatories, which he attaches, wherein he stated under oath his opinion that "other risk factors, rather than the prescription for Seroquel, led to the diabetes diagnosis."  (*Id.*). Defendant Meek maintains that Plaintiff failed to provide expert testimony to support causation. (*Id.*).  He states that he has not been able to locate the FDA warning label Plaintiff references in his response but that it "is insufficient to meet the medical-evidence requirement for causation to show that Seroquel actually caused the Plaintiff's diabetes *in this case*."  (*Id.*, PageID.1491-92.). Defendant Meek also maintains that Plaintiff's discussion of case law regarding the requirements for expert testimony under Kentucky medical malpractice law does not apply to his deliberate indifference claims.  (*Id.*, PageID.1492.).  Defendant Meek also argues that Plaintiff provides no medical evidence to show that Defendant Meek's actions were grossly incompetent.  (*Id.*, PageID.1492-93).

Defendant Meek also argues that Plaintiff has failed to how that he knew the decision to prescribe Seroquel was incorrect or inadequate to meet the subjective standard of a deliberate indifference claim. (*Id.*, PageID.1494). With regard to Plaintiff's argument that his mother did not tell Defendant Meek that Seroquel had been beneficial to Plaintiff in the past, Defendant Meek asserts that the affidavit Plaintiff produced was not sworn and thus cannot be relied on to defeat the motions for summary judgment. (*Id.*) Defendant Meek cites his sworn responses to Plaintiff's interrogatories for stating: "(1) that the Plaintiff told Dr. Meek numerous times that Seroquel had previously helped the Plaintiff; (2) that Seroquel was helping the Plaintiff at the time Dr. Meek was treating him with Seroquel; and (3) that the Plaintiff gave verbal consent for the Seroquel prescription." (*Id.*, PageID.1495).

Defendant Meek further maintains that Plaintiff has failed show a genuine issue of material fact with regard to his claim that he was force medicated because his claim that he was medicated in violation of an order from the Involuntary Medication Committee Hearing is "demonstrably false." (*Id.*, PageID.1496). He asserts that Plaintiff does not dispute that the Committee subsequently approved an involuntary medication order and that he was medicated pursuant to that order. (*Id.*). He argues that Plaintiff cites no legal authority for arguing that Defendants could not seek an involuntary medication order after a first request was denied. (*Id.*). He asserts that the medical records show that Plaintiff's mental health deteriorated after the first Involuntary Medication Committee Hearing. (*Id.*).

Moreover, with regard to Plaintiff's argument that he had no "psych issues" before his incarceration in KSR, Defendant Meek argues that while Plaintiff relies on a KSR intake form which stated that Plaintiff reported that he had no "psych issues" at the time he entered KSR, the fact that Plaintiff himself initially denied having psychiatric problems is not persuasive. (*Id.*).

Defendant Meek argues, "This is especially true since the medical record demonstrates that multiple medical and mental health staff observed a possible psychotic episode while the Plaintiff was at [BCFC] and immediately upon his assessment by mental health professionals at KSR." (*Id.*).

## F.

In Defendant Shelton's reply, he argues, "Plaintiff relies solely on an article discussing Seroquel for the proposition that this medication caused him to develop diabetes." (DN 188, PageID.1483). Defendant Shelton maintains that the article, standing alone, constitutes hearsay that does not fall within any exception to the hearsay rule. (*Id.*). He argues, "Plaintiff has not come forward with a qualified expert or witness to testify to the contents of this article or the application of this article to Plaintiff's case. Thus, Plaintiff has failed to provide admissible evidence to create a genuine issue of material fact." (*Id.*).

Defendant Shelton also argues that Plaintiff has failed to establish a claim for deliberate indifference because he has not alleged that he was deprived of medical care but claims that he was medicated against his will and the medication caused him to develop diabetes. (*Id.*). He asserts that "Defendant submitted the properly obtained Involuntary Medication Orders. Plaintiff has not submitted evidence to suggest that Defendants administered Seroquel or any other medication to Mr. Johnson outside of the parameters of this Order." (*Id.*, PageID.1484). Defendant Shelton also maintains that Plaintiff has not provided any evidence to show that Defendant Shelton had the required "culpable state of mind" to establish a deliberate indifference claim. (*Id.*).

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).  The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56.  "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

**IV.**

**A.**

Upon initial review pursuant to § 1915A, the Court allowed an Eighth Amendment claim to proceed based on Plaintiff's allegation in the verified amended complaint that Defendants "force medicated [him] with the bad drug Seroquel against my will after a medical board told them they could NOT." (DN 30, PageID.169).

The undisputed medical records show that an Involuntary Medication Hearing was held on November 15, 2016, and the Committee decided not to proceed with an involuntary medication order at that time. Plaintiff does not claim that he was forced to be medicated after the first hearing. However, the medical records also show, and Plaintiff does not dispute, that a second Involuntary Medication Hearing was held on January 24, 2017, after which Plaintiff was given Seroquel. Defendants have produced ample evidence in the form of Plaintiff's medical records showing the reasons for seeking a second Involuntary Medication Hearing, *i.e.*, Plaintiff's continued noncompliance with medication, delusional thinking, and "death threats and threats of physical injury to staff and family members[.]" (DN 163, PageID.1210). The Court finds that Plaintiff's allegation in the amended complaint that he was force medicated with Seroquel "against [his] will after a medical board told them they could NOT[]" is false. Plaintiff has, therefore, failed to show a genuine issue of material fact as to this claim.

Moreover, in his response to the motions for summary judgment, Plaintiff now makes a one-sentence allegation that, "In the second force medication medical board hearing my legal representative was the guy that hands out basket balls in the gym with 'no' medical exsperance." (DN 183, PageID.1467). Plaintiff did not challenge the adequacy of the hearing in his amended complaint, and therefore no such claim is before the Court. "A plaintiff may not expand his claims

to assert new theories for the first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).   Therefore, Plaintiff's allegation regarding the hearing itself will not be considered.

Further, Plaintiff's own opinion that he did not need psychiatric medication is not persuasive and not supported by the medical evidence.  *See Arellano v. Jones*, No. 3:20-cv-228-RMB, 2023 U.S. Dist. LEXIS 112019, at *35-36 (S.D. Cal. June 28, 2023) (finding that the plaintiff was "not a medical expert[] and his unsupported lay opinion" about the efficacy of a medication was "insufficient as a matter of law to establish a genuine factual dispute"); *Franklin v. Dudley*, No. 2:07-cv-2259 KJM KJN P, 2011 U.S. Dist. LEXIS 66337, at *15-16 (E.D. Cal. June 22, 2011) ("Plaintiff has not offered any expert evidence that the drugs offered in the alternative were not appropriate based on the fact that he had only one kidney.  Plaintiff's own opinion is not sufficient evidence to support this claim.").

For these reasons, Defendants' motions for summary judgment with regard to Plaintiff's claim based on the involuntary medication order will be granted.

**B.**

The Court also allowed an Eighth Amendment claim to proceed based on Plaintiff's allegations in the verified amended complaint that Defendants "know that Seroquel causes diabetes . . . & disregarded the excessive risk to my health & safety" and that he was diabetic "because of their actions."  (DN 30, PageID.169).

To establish a § 1983 claim premised on inadequate medical care in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).   A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component.   The objective component requires the existence of a sufficiently serious medical need.   *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish."   *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).   Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it."   *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837-47).   Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"   *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).   "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice."   *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Moreover, the standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential.   *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).   Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are "generally reluctant to second guess medical

judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  A court typically will not find deliberate indifference when some level of medical care has been offered to the inmate.  *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).  Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference.  *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).  Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate indifference claim.  *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).

With regard to the objective component, this is not a case where the plaintiff was denied medical treatment.  The medical records establish that Plaintiff received ongoing mental health treatment.  Plaintiff alleges that the treatment he received caused him to develop diabetes, but it is in not obvious that his diabetes was caused by taking Seroquel.  Where a plaintiff's deliberate indifference claim is based on the prison's failure to treat a condition adequately or where the prisoner's condition is non-obvious, medical proof is required to assess whether the treatment caused a serious medical injury.  *See King v. Alexander*, 574 F. App'x 603, 605 (6th Cir. 2014) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004)); *Malone v. Conley*, No. 1:17-cv-413, 2020 U.S. Dist. LEXIS 13346, at *16 (S.D. Ohio Jan. 27, 2020) (finding no genuine issue of material fact where the plaintiff produced "no verifying medical evidence establishing the necessary causation between the alleged lack of treatment on certain days and plaintiff's subsequent hospitalization").

In a similar case, an inmate alleged deliberate indifference to his serious medical needs because the defendants failed to warn him of the possible side effects of Seroquel and that he developed diabetes as a result of taking the medication.  *See Giles v. Walls*, No. 0:10-959-DCN-

PJG, 2011 U.S. Dist. LEXIS 87838, at *1 (D.S.C. July 18, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 92576 (D.S.C. Aug. 17, 2011).  In granting the defendants' motion for summary judgment, the court found, "[E]ven assuming the defendants were deliberately indifferent to [the plaintiff's] serious medical needs, [the plaintiff] cannot show that any such indifference caused him injury.  Although [the plaintiff] claims that he developed diabetes as a result of his Seroquel prescription, he offers no expert medical opinion supporting this contention."  *Id.* at *15.  The court also found that the defendants' failure to advise the plaintiff of the possible side effect of increased blood sugar from Seroquel "cannot be said to be so 'grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id.* at *12 (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)).

Similarly, Plaintiff offers no expert medical evidence that his diabetes was caused by taking Seroquel.  Plaintiff attached to his pretrial memorandum what he described as "documentation Seroquel causes diabetes."  (DN 133, PageID.772).  The attachment is a three-page document ostensibly published by the National Alliance on Mental Illness which includes the language that "Second generation antipsychotics increase the risk of diabetes, weight gain, high cholesterol, and high triglycerides."  (*Id.*, PageID.774).  Even assuming that this document constitutes admissible evidence, the document establishes that taking Seroquel "increases the risk of diabetes."  It does not establish that it caused Plaintiff himself to develop diabetes.  Plaintiff also argues in his response that the U.S. Food and Drug Administration issued a warning for Seroquel regarding "metabolic changes it cause to the body to doctor and put it on the Seroquel label as releated to diabetes."  (DN 183, PageID.1453).  Plaintiff did not produce the label, but again, even if he had produced admissible evidence of the label, it does not establish that Seroquel caused Plaintiff's diabetes.

Upon reviewing Plaintiff's attachments to his pretrial memorandum (DN 133) and the additional exhibits which he requested to be attached to his pretrial memorandum (DN 181), the only medical record Plaintiff produced which even references his diabetes diagnosis is a record dated July 20, 2020, documenting a "Condensed Health Services Encounter" which merely states "Medical Diagnosis:  Type 2 diabetes mellitus without complications" and sets forth a number of medical appointments.  (DN 181, PageID.1435).  It contains nothing related to the cause of Plaintiff's diabetes.  (*Id.*)

Defendant Meek produced a medical record dated February 15, 2021, documenting another "Condensed Health Services Encounter" in which Plaintiff saw psychiatrist Cody Pittman.  (DN 163, PageID.1236).  Plaintiff stated to the provider, "I was on Seroquel for years and it gave me diabetes." (*Id.*).  The provider documented as follows:

> Educated patient that Seroquel does have a side effect of metabolic syndrome, but it does not mean Seroquel gives you diabetes, as other life style choices play into the diagnosis as well.  Canteen list reviewed, once patient departed office.  Today patient purchased 113 dollars worth of items, to include Mountain Dew, Crackers, Chocolate Syrup, and Frosted Flakes, etc.  Patient states that mother is a diabetic and that the disease process runs in the family.

(*Id.*).

Presenting no evidence that Seroquel caused him to develop diabetes, Plaintiff essentially relies on his own opinion that his diabetes was caused by taking Seroquel.  This is insufficient to defeat summary judgment.  *See, e.g.*, *Johnson v. Alias*, No. 08-4258-CV-C-NKL, 2008 U.S. Dist. LEXIS 117315, at *4 (W.D. Mo. Dec. 22, 2008) (a plaintiff's "personal opinion about an issue of medical causation is not sufficient to allow this claim to proceed"), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 45970 (W.D. Mo. June 2, 2009).

Plaintiff has produced no admissible evidence, medical or otherwise, to show that Seroquel caused him to develop diabetes.  Therefore, the Court finds that Plaintiff has failed to establish a

genuine issue of material fact with regard to the objective component of a claim for deliberate indifference to serious medical needs and that Defendants are entitled so summary judgment on this basis.

To meet the subjective component of a deliberate indifference claim, "a plaintiff must produce evidence showing 'that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'"  *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  Thus, Plaintiff must show that Defendants subjectively knew the decision to prescribe Seroquel put Plaintiff at a substantial risk of serious harm.

According to the medical records produced, following approval in the second Involuntary Medication Hearing, Defendant Meek charted that in addition to prescribing Plaintiff Haloperidol Decanoate injections, he would "also add a supplement of Seroquel as this, per his mother's report, has been a very helpful medication for this man in the past manic/psychotic episodes."  (DN 163, PageID.1222).  Defendant Meek also produces his sworn answers to Plaintiff's interrogatories in which he stated under oath that Seroquel (or its generic form quetiapine) "was offered to Plaintiff as a voluntary medication, which Plaintiff consented to taking" and that "Plaintiff repeatedly reaffirmed that quetiapine was helping to improve his mental health."  (DN 190, PageID.1509).  In addition, Defendant Shelton produced his sworn affidavit in which he averred:

> The use of Seroquel to treat Mr. Johnson's Bipolar Disorder was reasonable and appropriate based upon his symptoms and presentation.  Each medication is accompanied by possible risks, side effects, and complications.  As a routine step of psychiatric care these risks, side effects, and complications are considered and weighed against the anticipated benefit of the medication for the patient.  Based on my education, training, experience, and the facts surrounding Mr. Johnson['s] psychiatric conditions, it is my opinion that there was not an obvious risk of serious

> harm to Mr. Johnson's health by utilizing Seroquel as a medication to treat his Bipolar Disorder."

(DN 164, PageID.1330).  The Court finds that the evidence supports Defendants' contentions that they subjectively believed that Seroquel was a beneficial drug to treat Plaintiff's mental health needs and did not present a substantial risk to him.

To rebut this evidence, Plaintiff attached to his pretrial memorandum a purported affidavit signed by his mother on April 11, 2022, in which she stated that she "had not seen or talked to [Plaintiff] for 7/8 years" and that she had "no knowledge of [Plaintiff] being on serquel . . . ." (DN 133, PageID.731-32).  However, the purported affidavit was not signed "under penalty of perjury" and therefore does not carry the weight of evidence to defeat Defendants' sworn statements.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Plaintiff also argues in his response that Defendants admitted that they knew that his mother had diabetes and "that Plaintiff had warning signs commonly associated with diabetes." However, he produces no medical records to support these assertions.  The medical record indicating his mother's history of diabetes, discussed above, was dated February 15, 2021, years after Defendants prescribed Seroquel to Plaintiff.  (DN 163, PageID.1236).

Plaintiff also produced a document titled "Consent for Treatment with Psychotropic Medication" which sought Plaintiff's written consent to take Seroquel.  Plaintiff contends that the fact that he did not sign the document shows that he did not give written consent to take Seroquel. Written on the form next to "Signature of Patient" is "Pt. unable to sign due to current locked-down status."  However, assuming Plaintiff's statement is true, that he refused to give written consent to take Seroquel, this does not negate Defendant Meek's sworn statement that Plaintiff gave verbal consent to take the medication and repeatedly reaffirmed that it was helping him.

Plaintiff produces no evidence to show that either Defendant had subjective knowledge that Seroquel was not proper or adequate to treat Plaintiff's mental health issues or that they had subjective knowledge of a substantial risk that Plaintiff would develop diabetes. *See Valdez v. Zhang*, No. 20-cv-0736-JLS-WVG, 2023 U.S. Dist. LEXIS 52240, at *20 (S.D. Cal. Mar. 27, 2023) (granting summary judgment where the plaintiff failed to "offer any evidence whatsoever that [his doctor's] clinical assessments and recommendations . . . were made in conscious disregard of an excessive risk to Plaintiff's health."); *Strickland v. Gill*, No. 4:15-2304-JFA-TER, 2015 U.S. Dist. LEXIS 134700, at *4 n.3 (D.S.C. Aug. 4, 2015) (dismissing case upon initial review under 28 U.S.C. § 1915A where inmate alleged that taking Seroquel caused him to developed diabetes finding, "Plaintiff's allegation is that the Defendants failed to inform him of an alleged side effect from the medication at issue.  However, . . . this may support a negligence claim, but does not rise to the level of a constitutional violation."), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 133592 (D.S.C., Oct. 1, 2015); *Martinez v. Corr. Med. Serv.*, No. 11-1065-LPS, 2012 U.S. Dist. LEXIS 37583, at *7 (D. Del. Mar. 19, 2012)  ("[T]he Complaint alleges that Plaintiff was prescribed [Seroquel] and subsequently developed diabetes because of long-term use, all while receiving no warnings regarding such long-term use. These allegations constitute a medical malpractice/negligence claim, not a claim of deliberate indifference.").

Therefore, the Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding the subjective component of a deliberate indifference claim and that Defendants are entitled to summary judgment on this basis, as well.

## C.

Finally, in his response to the motions for summary judgment, Plaintiff makes allegations which could be construed as asserting new claims.  He raises a variety of allegations about his

conditions of confinement in the CPTU, asserts violations of HIPAA, and alleges denial of pain medication and treatment for other medical issues unrelated to his claims regarding his treatment with Seroquel.  As stated above, a plaintiff "'may not expand his claims to assert new theories for the first time in response to a summary judgment motion.'"  *Desparois*, 455 F. App'x at 666 (quoting *Bridgeport Music, Inc.*, 508 F.3d at 400).  These claims are not properly before the Court and therefore will not be considered.

## V.

For the reasons stated above, **IT IS ORDERED** that the motions for summary judgment (DNs 161 and 164) are **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein and denying the pending motions as moot.[8]

Date:    September 19, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of record
4414.010

---

[8] The Court has reviewed Plaintiff's pending motions and finds that they are either repetitive of previous motions which have been denied or are without merit and warrant no discussion.